# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| **ERIN AMANDA HOWTON ANGEL,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **ANDREW M. SAUL,** ) <br> **COMMISSIONER OF SOCIAL SECURITY** ) <br> **ADMINISTRATION,** ) <br> ) <br> **Defendant.** ) | Civil Action No. 2:18-CV-00094 <br> Judge Crenshaw / Frensley |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Plaintiff has filed an accompanying Memorandum. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 20.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff was found disabled as of December 28, 2005, in a decision dated February 22, 2008. *See, e.g.,* Docket No. 11, Attachment ("TR") pp. 110-18. At the time of the hearing the Administrative Law Judge ("ALJ") found that Plaintiff had the following medically determinable impairments: bipolar disorder, anxiety disorder, left shoulder impairment and migraine headaches. TR 116. The ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work and could not tolerate stress or work eight hours in a day due to her psychological impairments. *Id.* The ALJ further found that Plaintiff was unable to perform any past relevant work and that there were no jobs in the national economy that Plaintiff could perform. TR 117. Plaintiff was subsequently awarded benefits. TR 110-12.

The SSA re-assessed Plaintiff's eligibility for Disability Insurance Benefits and determined to cease benefits . TR 121-27. Plaintiff subsequently requested a hearing before an ALJ. TR 182. Plaintiff's hearings were conducted on February 9, 2016, and May 24, 2016. TR 52-98. The ALJ issued a decision on July 15, 2016, and found that Plaintiff was no longer disabled as of October 31, 2012. TR 128-43. The ALJ found that as of October 31, 2012, Plaintiff had the following medically determinable impairments: bipolar disorder and obesity. TR 133. The ALJ further found that "as of October 31, 2012, the impairments presented at the time of the CPD [Comparison Point Decision] had decreased in medical severity to the point where the claimant had the residual functional capacity to perform work at all exertional levels." TR 135.

Plaintiff timely filed a request for appeal to review the July 15, 2016 decision. TR 254-55. The Appeals Council remanded the case to an ALJ. TR 151-52. A new hearing was held on

March 6, 2018, by Administrative Law Judge ("ALJ") Todd Spangler. TR 35-51. Plaintiff and vocational expert ("VE"), Rodney Caldwell, appeared and testified. TR 35-51.

On April 13, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 8-27. Specifically, the ALJ made the following findings of fact:

> 1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated February 22, 2008. This is known as the "comparison point decision" or CPD.
>
> 2. At the time of the CPD, the claimant had the following medically determinable impairments: bipolar disorder, anxiety disorders, left shoulder impairment and migraine headaches. These impairments were found to result in the residual functional capacity to perform a limited range of sedentary work. She cannot tolerate stress or work eight hours in a day due to her psychological impairments.
>
> 3. Through the date of this decision, the claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).
>
> 4. The medical evidence establishes that, since October 31, 2012, the claimant has had the following medically determinable impairments: bipolar disorder and obesity. These are the claimant's current impairments.
>
> 5. Since October 31, 2012, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 6. Medical improvement occurred on October 31, 2012 (20 CFR 404.1594(b)(1)).
>
> 7. Since October 31, 2012, the impairments present at the time of the CPD decreased in medical severity to the point where the claimant has had the residual functional capacity to perform work at all exertional levels. The claimant can perform work that has no strict timeframes or quotas.

8. The claimant's medical improvement is related to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9. Since October 31, 2012, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10. Based on the impairments present since October 31, 2012, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant is limited to one, two and three step instructions. She can tolerate no more than occasional contact with coworkers, supervisors or the public; with changes introduced gradually and infrequently.

11. Since October 31, 2012, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

12. On October 31, 2012, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

13. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

14. Since October 31, 2012, transferability of job skills is not material to the determination of disability because using the Medical Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

15. Since October 31, 2012, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since October 31, 2012, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

16. The undersigned has fully complied with the Remand Order of the Appeals Council issued on August 18, 2017, as set out in the Jurisdictional and Procedural History section above.

17. The claimant's disability ended on October 31, 2012, and the

        claimant has not become disabled again since that date (20 CFR
        404.1594(f)(8)).

TR 13-27.

On June 8, 2018, Plaintiff timely filed a request for review of the hearing decision. TR 311. On September 7, 2018, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept

5

as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not

only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[1] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th

---

[1] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Error

Plaintiff contends that the ALJ did not accord proper weight to Plaintiff's treating physician, Dr. Moore. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Weight Accorded to Opinion of Plaintiff's Treating Physician**

Plaintiff maintains that the ALJ did not give proper weight to the opinion of Plaintiff's treating physician, Dr. Stephen Moore. Docket No. 16, p. 9. Plaintiff argues that the ALJ stated facts out of context including Plaintiff's ability to attend church meetings, church fellowships, and Plaintiff's ability to socialize. *Id.* Plaintiff further argues that the ALJ "erroneously found that [Plaintiff] quit seeing her counselor after six months." *Id.* Plaintiff contends that Dr. Moore's opinion is consistent with records from Dr. Halperin and Dr. Martinez. *Id.* at 10-11.

Defendant responds that the ALJ properly considered the opinion of Dr. Moore. Docket No. 20, p. 4. Specifically, Defendant argues that "the opinion provided by the doctor was given

little weight because it was inconsistent [with] the record, which included many significant daily activities including part-time work." *Id.* Defendant argues that statements made to the agency by Dr. Moore in a letter dated January 6, 2011, are conclusory and inconsistent with the record. *Id.* at 5-6. Defendant specifically agues that Dr. Moore's statement concerning Plaintiff's inability to maintain full time employment is a conclusory issue of disability that is reserved for the commissioner. *Id.* Defendant maintains that the ALJ cited a number of activities Plaintiff performed that are inconsistent with the opinion of Dr. Moore. *Id.* at 7. Defendant contends that the vocational expert's testimony contradicts Dr. Moore's opinion on Plaintiff's extreme work limitations. *Id.* at 8. Defendant argues that the ALJ found the global assessment of functioning ratings provided by Dr. Moore were inconsistent with other evidence in the record. *Id.* at 9. Defendant further argues that the ALJ properly accorded greater weight to the opinions of Nicole Martinez, Psy.D., and agency doctors. *Id.* at 9-10.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative

examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[2] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear

---

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

11

to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed the medical opinion evidence as follows:

> The undersigned gave little weight to the medical source statement dated January 11, 2016 from Stephen T. Moore. D.O. that the stress of maintaining full time employment would be too much for the claimant and would likely exacerbate her bipolar disorder symptoms because it was inconsistent with the record and her consistent history of work activity (Exhibit CDR-B23F). It was also conclusory; since there was little evidence that, the claimant had engaged in full time employment during the time that Dr. Moore treated her. In addition, a statement by a medical source that the claimant is "disabled" or "unable to work" is not an opinion as to the nature and severity of the claimant's impairment, and therefore, an issue reserved to the Commissioner (20 CFR 404.1527(e); and SSR 96-5p). Dr. Moore noted that the claimant's current job as a co-pastor with her husband was ideal, because her husband could perform the majority of the duties required and the

> claimant could limit her role. Dr. Moore is a psychiatrist and provided routine conservative mental health treatment to the claimant from 2010 through April 2016, on a quarterly basis. He prescribed psychotropic medications that controlled her symptoms.
>
> The undersigned gave little weight to the medical source statement dated April 28, 2016 from Stephen T. Moore, D.O., that the claimant had marked limitations in making judgment or simple work related decisions, carrying out detailed instructions, performing duties on a schedule, sustaining a normal routine without special supervision, interacting with supervision, coworkers, work pressures, getting along with others, responding appropriately to change and setting realistic goals, because it is inconsistent with the record (Exhibit CDR-B28F). The claimant admitted that she was able to drive 20 miles and pick up her children from school on a daily basis, visit with people in the afternoon, attend lacrosse meets, socialize with friends and family (Exhibits CDR-B7E, CDR-B20F and CDR-B25F; and Hearing Testimony). Moreover, the claimant's husband opined that the claimant was able to preach, type the weekly bulletin and attend church business meetings and church fellowships.
>
> In addition, the undersigned gave no weight to his opinion that the claimant had extreme limitations in completing a normal workday and workweek, and responding to change, because again the limitations are extreme and inconsistent with the record that revealed that the claimant worked part time for ten years (Exhibit CDR-B26F). However, the undersigned gave great weight to the opinion that the claimant could not perform full time work as a pastor, because the claimant is limited to unskilled work. The Vocational Expert testified that the job as Pastor had a specific vocational preparation (SVP) of eight, and as a Pastor's assistant had a SVP of six, both skilled jobs. The claimant is limited to unskilled work. Dr. Moore further opined that the claimant met the criteria of listing 12.04 due to her bipolar disorder, which is given no weight because it is based on his earlier opinion that the claimant had marked and extreme functional limitations.

TR 22-23.

Dr. Moore treated Plaintiff for an extensive period of time, a fact that would justify the ALJ's according greater weight to his opinion than to other opinions, as long as that opinion was

13

supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with the evidence of record. As can be seen, however, Dr. Moore's opinion contradicts other substantial evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 CFR § 416.927(e)(2).

Because Dr. Moore's opinion was inconsistent with other substantial evidence in the record, the Regulations do not mandate that the ALJ accord Dr. Moore's evaluation controlling weight. Accordingly, Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver

of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

JEFFERY S. FRENSLEY
United States Magistrate Judge